T.C. Memo. 2000-156

UNITED STATES TAX COURT

PHILLIP M. WENGER, C.P.A., A SOLE PROPRIETOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5580-99.                          Filed May 12, 2000.

Phillip M. Wenger, pro se.

<u>Roger P. Law</u>, for respondent.

MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  Respondent determined a

deficiency in petitioner's Federal excise tax under section

4971(a) for the taxable year 1994 in the amount of $1,828, as

well as an addition to tax under section 6651(a)(1) for failure

to timely file an excise tax return in the amount of $457.[1]  The

sole issue for decision is whether petitioner's money purchase

pension plan satisfied the minimum funding standards of section

412.[2]  We hold that it did not.[3]

Background

This case was submitted fully stipulated under Rule 122, and

the facts stipulated are so found.  Petitioner resided in San

Francisco, California, at the time that his petition was filed

with the Court.

Petitioner is a certified public accountant who operates a

sole proprietorship.  Petitioner adopted the Phillip M. Wenger

self-employed retirement money purchase plan (the Wenger plan) in

1984.  Thereafter, in August 1990, petitioner adopted an updated

version of the Wenger plan using a prototype money purchase plan

offered by Charles Schwab and Co., Inc. (Charles Schwab).  In

---

[1]  All section references are to the Internal Revenue Code,
as amended, and all Rule references are to the Tax Court Rules of
Practice and Procedure.  All amounts are rounded to the nearest
dollar.

[2]  There is no indication that petitioner applied for waiver
of the minimum funding standards on the ground of business
hardship as provided under sec. 412(d).  In any event, petitioner
has not raised the question of whether a valid waiver under sec.
412(d) existed, and we do not consider that matter.

[3] Petitioner concedes that if a funding deficiency exists
with respect to his money purchase pension plan for 1994, then he
is liable for the addition to tax for failure to timely file an
excise tax return.

June 1990, the Internal Revenue Service issued a favorable determination letter to Charles Schwab for the prototype standardized money purchase pension plan adopted by petitioner. In December 1994, petitioner adopted a further updated version of the Wenger plan, again using a prototype money purchase plan offered by Charles Schwab.

The Wenger plan was in effect for petitioner's 1994 tax year. Petitioner is the employer who sponsors the Wenger plan and is responsible for funding it. The Wenger plan is a qualified plan subject to the minimum funding standards of section 412.

The Wenger plan has a plan year ending December 31, and the plan reports on a calendar year basis. On July 6, 1995, petitioner filed a Form 5558, Application for Extension of Time to File Certain Employee Plan Returns, requesting a 2-1/2-month extension to file the annual return, Form 5500-C/R, for the Wenger plan. The extension was granted, and the Form 5500-C/R for the Wenger plan was therefore due on October 16, 1995. Petitioner filed Form 5500-C/R for the Wenger plan no later than October 16, 1995.

On Form 5500-C/R, petitioner reported that, pursuant to section 412, the required contribution to the Wenger plan was $18,275. Petitioner made the required contribution on October

16, 1995.  On Form 5500-C/R, petitioner designated the entire $18,275 contributed as paid for the 1994 plan year.

Petitioner reported income and expense in respect of his sole proprietorship on a Schedule C, Profit or Loss From Business, to his Form 1040 on a calendar year basis.  He applied for both an automatic 4-month extension and an additional extension of time to file his Federal income tax return for 1994. The extensions were granted, and petitioner's 1994 Federal income tax return was therefore due on Monday, October 16, 1995.  On his 1994 Federal income tax return, petitioner deducted the entire $18,275 as a contribution to the Wenger plan.

Petitioner did not file a Form 5330, Return of Initial Excise Taxes Related to Pension and Profit-Sharing Plans, for 1994.

In the notice of deficiency, respondent determined that for the year in issue, an accumulated funding deficiency of $18,275 existed for the Wenger plan.  Respondent further determined that as the plan's sponsor and person responsible for making the contributions, petitioner was liable for an excise tax equal to 10 percent of the funding deficiency pursuant to section 4971(a), and that petitioner was liable for an addition to tax under section 6651(a)(1) for failure to timely file Form 5330 for the Wenger plan.

## Discussion

Section 412(a) requires generally that an employer who sponsors a qualified retirement plan such as a money purchase plan must satisfy the minimum funding standard for such plan for each plan year. In order to meet the minimum funding standard, the plan must not have an accumulated funding deficiency for the plan year. See sec. 412(a). To determine whether an accumulated funding deficiency exists for any year, pension plan costs and liabilities are compared to employer contributions through the "funding standard account". At the end of each plan year, the employer will have satisfied its minimum funding obligation if the aggregate charges to the account, determined on a cumulative basis, do not exceed the aggregate credits. Any excess is an accumulated funding deficiency.

Section 4971(a) imposes on the employer responsible for making the required contributions a 10-percent excise tax on any accumulated funding deficiency, as defined in section 412(a), existing for any plan year. The imposition of the excise tax under section 4971(a) is mandatory if there is an accumulated funding deficiency for any plan year. See D.J. Lee, M.D., Inc. v. Commissioner, 92 T.C. 291, 300 (1989), affd. 931 F.2d 418 (6th Cir. 1991).

The parties agree that for the Wenger plan year ending December 31, 1994, petitioner was required to make contributions

in the amount of $18,275 and that petitioner's failure to make a timely contribution would result in an accumulated funding deficiency in such amount.  The only issue is whether petitioner made a timely contribution for the year.

Section 412(b)(3)(A) provides in pertinent part that "the funding standard account shall be credited with * * * the amount <u>considered contributed</u> by the employer to or under the plan for the plan year". (Emphasis added.)  As applicable to a money purchase plan, section 412(c)(10)(B) provides:

> any contributions for a plan year made by an employer after the last day of such plan year, but not later than two and one-half months after such day, shall be deemed to have been made on such last day.  For purposes of this subparagraph, such two and one-half month period may be extended for not more than six months under regulations prescribed by the Secretary.

Section 11.412(c)-12(b), Temporary Income Tax Regs., 41 Fed. Reg. 46597 (Oct. 22, 1976), automatically extends the 2-1/2-month period by another 6 months for a total of 8-1/2 months.  Thus, an employer's contributions are credited to the plan's funding standard account for a particular plan year if the contributions are "made" within 8-1/2 months after the last day of the plan year.  If, in the absence of a waiver, see <u>supra</u> note 2, the employer makes a contribution beyond the 8-1/2-month period, the contribution is untimely, thus resulting in an accumulated funding deficiency.  In petitioner's case, the 8-1/2-month period

expired on September 15, 1995.  Petitioner made the contribution on October 16, 1995.

Petitioner contends that no accumulated funding deficiency existed for the Wenger plan's 1994 year because the plan provided:

> The employer contribution for each plan year shall be delivered to the custodian not later than the due date for filing the employer's income tax return for its fiscal year in which the plan ends, including extensions thereof.

Petitioner points out that he made the required contributions to the Wenger plan on or before October 16, 1995, the due date of his income tax return, including extensions thereof.  Petitioner contends that because the prototype plan document sponsored by Charles Schwab, the plan adopted by petitioner as the Wenger plan, received a determination letter approving the language of the plan, the language of the plan should control whether a timely contribution was made.  We disagree.

The minimum funding standards appear in section 412 and are not a qualification requirement of section 401(a).[4]  Thus, the

---

[4]  Cf. sec. 11.412(c)-12(b)(2), Temporary Income Tax Regs., 41 Fed. Reg. 46597-46598 (Oct. 22, 1976), providing:

> The rules of this section relating to the time a contribution to a plan is deemed made for purposes of the minimum funding standard under section 412 are independent from the rules contained in section

(continued...)

failure to meet the minimum funding standards does not disqualify a plan. As a corollary, determination letters do not deal with minimum funding standards.

The procedures for the issuance of determination letters are set out in section 601.201(o), Statement of Procedural Rules. Pursuant to section 601.201(o)(2), Statement of Procedural Rules, a determination letter may be issued involving the provisions of sections 401, 403(a), 405, and 501(a), generally with respect to the initial qualification of certain plans, the initial exemption from Federal income tax under section 501(a) of trusts forming a part of a qualified plan, the deductibility of employer contributions under section 404(a), and amendments, curtailments, or terminations of such plans and trusts. However, determination letters do not include determinations relating to other matters pertaining to plans or trusts, specifically including issues under section 412. See sec. 601.201(o)(2)(ii), Statement of Procedural Rules. Thus, a plan may be deemed qualified and receive a favorable determination letter, but fail to satisfy the minimum funding standard of section 412. Therefore, even if the language of the Wenger plan was approved regarding the

---

[4](...continued)
404(a)(6) relating to the time a contribution to a plan is deemed made for the purposes of claiming a deduction for such contribution under section 404.

requirements of section 401(a), such language cannot serve to turn an otherwise late contribution into a timely one.

Notwithstanding the foregoing, petitioner relies on IRS Publication 560, Retirement Plans for the Self-Employed (Pub. 560) for the proposition that for the purpose of minimum funding standards, contributions can be retroactively applied to the previous year if the contributions are made by the due date of the employer's return plus extensions. Although Pub. 560 does provide that the last date for contribution to a plan such as the Wenger plan is the due date of the employer's return plus extensions, that language appears under the heading "Contributions" and deals with the deductibility of such contributions by the employer. Section 404(a)(6) provides, and Pub. 560 states, that a contribution is deemed timely, and hence deductible, if made by the due date of the employer's return, including extensions thereof. Cf. sec. 11.412(c)-12(b)(2), Temporary Income Tax Regs., 41 Fed. Reg. 46597-46598 (Oct. 22, 1976). Notably, similar language does not appear in Pub. 560 under the heading of "Minimum Funding Requirements". Rather, the portion of the publication dealing with the minimum funding standard of section 412 specifically states that contributions to a plan will not be considered timely for the purpose of the minimum funding standard if made any later than 8-1/2 months after the end of the plan year. In essence, section 404(a),

dealing with deductibility, and section 412, dealing with the minimum funding standard, provide for different periods within which a contribution must be made in order to be timely, and Pub. 560 restates those different periods.

Even if Pub. 560 could be construed to suggest that a contribution will be deemed timely for minimum funding standard purposes if made by the due date of the employer's return plus extensions, it is clear that the sources of authoritative law in the area of Federal taxation are the relevant statutes, regulations, and judicial decisions and not informal publications issued by the Internal Revenue Service. See Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979); Green v. Commissioner, 59 T.C. 456, 458 (1972); see also Dixon v. United States, 381 U.S. 68, 73-75 (1965); Adler v. Commissioner, 330 F.2d 91, 93 (9th Cir. 1964), affg. T.C. Memo. 1963-196; Carter v. Commissioner, 51 T.C. 932, 935 n.3 (1969). In other words, reliance on an informal IRS publication may not be used to justify a reporting position that is inconsistent with the operative law. See, e.g., Johnson v. Commissioner, 620 F.2d 153, 155 (7th Cir. 1980), affg. T.C. Memo. 1978-426; Jones v. Commissioner, T.C. Memo. 1993-358.

Finally, petitioner seeks to have us redress the timing difference between section 404(a) and section 412. In this regard, petitioner points out that corporate taxpayers are deemed

to make a timely contribution for purposes of section 412 if plan contributions are made by the due date of the corporate tax return including extensions thereof, because for corporate taxpayers such date (including extensions thereof) falls 8-1/2 months after the close of the taxable year.  See secs. 6072(b), 6081(a).  Petitioner claims that similar treatment should be given to self-employed taxpayers; i.e., that contributions made by the due date of a self-employed individual's return (including extensions thereof) should be deemed timely for purposes of both section 404(a) and section 412.  However, it is not within our jurisdiction to change requirements that are plainly mandated by statute.  In short, we cannot ignore the plain language of the statute and, in effect, rewrite the statute to achieve what may seem to petitioner to be a more equitable result.  See Hildebrand v. Commissioner, 683 F.2d 57, 59 (3d Cir. 1982), affg. T.C. Memo. 1980-532; Johnson v. Commissioner, 661 F.2d 53, 54-55 (5th Cir. 1981), affg. 74 T.C. 1057 (1980); D.J. Lee, M.D., Inc. v. Commissioner, 92 T.C. at 302.

Accordingly, petitioner did not make a timely contribution to the Wenger plan for purposes of the minimum funding standard of section 412.  Respondent's determination of excise tax under section 4971(a) is therefore sustained.

To reflect our disposition of the disputed issue, as well as petitioner's concession,

<u>Decision will be entered</u>

<u>for respondent.</u>